**JONES et al. v. PIERCE et al.**

**No. 16116.**

Court of Appeal of Louisiana. Orleans.

June 24, 1935.

Lewis R. Graham and Harry R. Cabral, both of New Orleans, for appellants.

Leo R. Wertheimer and Henry M. Robinson, both of New Orleans, for appellee.

JANVIER, Judge.

Mr. and Mrs. Hugh T. Jones were in their stationary automobile, when, on the night of February 1, 1932, at about five minutes past nine, it was struck in the rear by another car driven by Jonathan E. Pierce. The damage to the Jones car was negligible, and no claim is made

therefor, and Mr. Jones sustained no physical injuries, but recovery is sought by both Mr. and Mrs. Jones because of the fact that, a few days after the accident, it was found necessary by attending physicians to remove from the womb of Mrs. Jones, who had been pregnant for about four or five months, the foetus of an unborn child.

The contentions of plaintiffs are that the accident was caused by the negligence of Pierce, and that as the result of the accident the foetus was killed, rendering necessary its removal by surgeons. Defendant maintains that he was not at fault in the matter, and also especially contends that there is not sufficient proof to warrant the conclusion that the death of the foetus, which necessitated its subsequent removal, was caused by the accident.

Both Jonathan E. Pierce, who was a minor, and his mother were made defendants, plaintiff having alleged that the father of the said minor was dead, and that, consequently, the mother, with whom the minor was living, was responsible for the results of the minor's negligence. Civ. Code, art. 2318.

Before the case was tried below, Jonathan Pierce attained his majority, and plaintiffs, assuming that, because of this fact, they could no longer maintain their suit against the mother, consented to the dismissal of the case as against her. In the record we find the following:

"By the Court: It is admitted by counsel for the plaintiff that he no longer has any claim against Mrs. Jonathan E. Pierce, heretofore made a defendant in this suit and the suit shall now be conducted solely against the minor, Jonathan E. Pierce, who has now become of age and appears in his own behalf. Is that correct Mr. Cabral?

"By Mr. Cabral: Yes, sir, that is correct."

Since the dismissal of the suit as against Mrs. Pierce was consented to, it is unnecessary that we consider the question of whether, under the article of the Code referred to above, she could have been held liable, after the minor had attained his majority, for the consequences of negligent acts committed by him prior thereto.

In the district court there was judgment for defendant, the district judge having reached the conclusion set forth by him in the following language:

"* * * I am not in the slightest degree convinced that the slight accident which I have described had anything to do with this abortion. At the very best it is a mere possibility and in a matter of serious import to myself I would not act on it, as I do not believe that this accident had anything to do with the abortion."

If, as a matter of fact, the accident did not cause the damage complained of, then there is no liability in defendant. Therefore, since our brother below has found that there is not in the record sufficient proof of causal connection between the accident and the subsequent abortion, we shall first investigate that question before examining the evidence concerning the accident itself.

The record shows that Mrs. Jones, prior to the accident, was a normal, healthy woman, and that she, on the night of the accident, had been pregnant for about four or five months. She was seated on the front seat of her husband's car when, in its course across St. Charles avenue, it was brought to a stop to permit a street car to pass ahead of it. A few feet of the rear portion of the car extended into the roadway of St. Charles avenue, and while it was in this position the Pierce car approached. Pierce was unable to entirely stop it or to completely avoid striking the rear of the Jones car. The result was a blow which pushed the Jones car forward about one foot, and which swerved it sidewise about three feet. Mrs. Jones received no external injuries, bruises, or abrasions, and there was nothing to indicate to her, or to any one else, that she had been in any way injured, except that she states that "my stomach kept quivering." When asked whether the impact was a "terrible blow," she said, "No—I don't think it was." She herself also testified that it did not physically injure her in any way. She returned to her home and during that night gave no indication whatever of having been injured. On the next day she reported for her work as a comptometer operator, and, according to her testimony, "worked that night until 8:30," and even then evidently felt perfectly well, because she did not go from her place of employment to her home, but went to Loyola University to wait until her husband, who was a student there, could complete his studies at the night school. She then went to her home and

retired, still without any premonition or indication of internal injuries or disorders, and she slept until about midnight, when she was awakened by the fact that she "was losing a lot of blood." She went at once to a hospital, and there the physician in charge was successful in stanching the flow. On the next morning she returned to her home, and, upon calling at the office of her own physician, was examined by him, with the result that he found one of the cords protruding in the vagina, and concluded from this that she had "had an abortion"; that the foetus was dead, and that she should "have the uterus cleaned out at the hospital."

It will be noted that, except for very slight nervous shock at the time of the accident, no physical injury was sustained, no labor pains commenced, and no symptoms of an impending miscarriage manifested themselves, and that it was not until about thirty hours after the collision that she suffered to any appreciable extent. In the meantime, she went about all her duties without pain and continued at her work for a full day and for a part of the next night. It is unbelievable that, had the umbilical cord been severed at the time of the accident, there would have been no immediate evidence of that fact. This cord supplies to the foetus the blood and later the nourishment necessary for its development and growth, and its severance would, unquestionably, have produced immediate hemorrhage, pain, and suffering. It is true that the physicians undoubtedly were of the opinion that the "abortion" (and we use the word "abortion," which means an involuntary delivery, as distinguished from the term "miscarriage," which latter word is used where there is a spontaneous but premature expulsion of the immature foetus) had been made necessary by the accident, but none of them had seen the accident, none knew that it had been of the simplest sort, and all assumed from the history given them that there had been a collision which had actually injured Mrs. Jones, whereas the record shows that the impact was so slight that it was not necessary to repair the damage caused to the Jones car. The right rear fender was slightly bent towards the tire, but, immediately after the accident, this was pulled into place by hand and no other repairs were necessary.

Plaintiffs contend that there has been established in our jurisprudence a rule to the effect that, where a pregnant woman is in an accident and later there is miscarriage, or an abortion becomes necessary, there is something akin to a presumption that the accident was the cause of the subsequent misfortune. As supporting this view, counsel point to Stewart et al. v. Arkansas Southern R. Co., 112 La. 764, 36 So. 676, 677, and to Joiner v. Texas & Pac. Ry. Co., 128 La. 1050, 55 So. 670, 671. It is true that in each of those cases there was no positive proof that the misfortune had been caused directly by the accident, but in each of them there were, immediately following the trauma, internal manifestations of unfortunate events to come. In the Stewart Case the court found that:

"The shock suffered was sudden and violent, and, immediately after, the pain complained of was felt."

In the Joiner Case the court, referring to the plaintiff, said:

"The sudden stop of the train had thrown her against the corner of the chair in front of her. * * * She was six or eight weeks gone in pregnancy. She had begun immediately after the shock to feel pains in the lower abdominal regions, and had continued to feel them on her way home. * * * She continued to suffer and to lose, and would remain in bed an hour or two every day, and would do little or no work. On the thirtieth day after the collision, the flow having increased alarmingly, she sent for a physician. He found that she was suffering from a miscarriage, and removed the contents of her womb."

Substantially different are the facts here, for Mrs. Jones states that no part of the car came into physical contact with her, she suffered no pain, sustained no cuts or bruises, had no internal symptoms of injury except "only my stomach kept quivering," and continued at her work without pain of any kind for an entire day. There is no doubt that there are many other possible causes for misfortune such as Mrs. Jones sustained. One doctor testified to these other possible causes. We cannot conclude that the district judge was in error in deciding that the proof does not show with sufficient certainty that the cause was the accident complained of.

It is true enough that in the Joiner Case, supra, the Supreme Court said:

"The miscarriage had a cause; and, there being one so obvious, what wisdom

is there in doubting and searching for any other?"

But there there was an obvious cause, because, as we have shown, the symptoms of internal injury immediately manifested themselves and continued every day. Here there was no manifestation whatever.

With the deepest sympathy for the unfortunate plaintiffs, we find ourselves unable to conclude that the district judge was in error.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, affirmed, at the cost of plaintiffs.

Affirmed.